UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARK MACRURY,

        Plaintiff,                     Case No. 16-cv-13889

v.                                          Honorable Thomas L. Ludington

AMERICAN STEAMSHIP COMPANY,

        Defendant.

_____/

**OPINION AND ORDER GRANTING MOTION TO STAY**

On November 2, 2016, Plaintiff Mark MacRury filed a complaint against Defendant American Steamship Company. ECF No. 1. In the complaint, MacRury alleges that he suffered an injury while working as a crew member on one of Defendant's vessels because Defendant negligently assigned MacRury to activities it knew or should have known would result in injury. Compl. at 1–2. On April 27, 2017, Defendant filed a motion to stay litigation in favor of arbitration. ECF No. 9. Five days later, MacRury filed an amended complaint. ECF No. 10. Defendant alleges that the amended complaint does not moot the motion for a stay. For the following reasons, the motion to stay will be granted.

**I.**

MacRury's amended complaint largely mirrors his original complaint. Am. Compl., ECF No. 10. He premises his claim for relief on the Jones Act, 46 U.S.C. § 30104 and general maritime law. MacRury alleges that, while serving as a crew member on one of Defendant's vessels, he was assigned to work activities, from November 7, 2014, through August 2016, that Defendant "knew or should have known would result in injury." *Id.* at 2. MacRury alleges that Defendant's negligent assignment was "separate, apart, and exclusive of any pre-existing

conditions" that MacRury might have suffered from. *Id.*[1] Rather, he contends that his injury is traceable to "the inadequate work procedures, assistance, and equipment he was provided." *Id.* He alleges that he sustained "injury to both shoulders resulting from said failure to provide a safe place to work and seaworthy vessel." *Id.*

In its motion to stay, Defendant provides additional factual context. Defendant alleges that MacRury was working as a Conveyorman on one of Defendant's vessels on September 5, 2013. On that day, MacRury allegedly suffered a shoulder injury. Claims Arb. Agree., ECF No. 6, Ex. A. On February 27, 2015, MacRury and Defendant executed a Claims Arbitration Agreement. *Id.* That agreement will be reproduced in part:

> WHEREAS, Mark Macrury . . . was employed as a Conveyorman on the M/V H. Lee White and allegedly became ill or injured on September 5, 2013, American Steamship Company . . . [has] a duty to pay maintenance and cure because ASC was the owner and/or operator of the vessel and/or the employer of Mark Macrury. ASC has the obligation to pay Mark Macrury $16.00 PER DAY maintenance and $188.00 PER WEEK contractual support benefit (CSB) (the CSB payments being required for a period of one year only) pursuant to the contract with the SIU.
>
> It is the position of ASC that ASC is responsible only for maintenance and cure and is not responsible or liable for any other damages in regard to Mark Macrury's alleged illness or injuries under the doctrine of unseaworthiness, the Jones Act or any other applicable law. Nonetheless, ASC is prepared to make advances against settlement, arbitration award or judgment of any claim that could arise under the doctrine of unseaworthiness, the Jones Act, or any other applicable law provided Mark Macrury agrees to arbitrate these claims.
>
> Therefore, in consideration of Mark Macrury agreeing to arbitrate all claims against ASC . . . arising under the theory of unseaworthiness, Jones Act, or any other applicable law, . . . ASC agrees to pay Mark Macrury $86.80 per day (to be paid in biweekly installments of $1,215.20), in addition to $16.00 per day in maintenance and $188 per week CSB, as an advance against settlement, arbitration award or judgment, until he has been declared fit for duty, and/or maximum medical improvement, and/or October 27, 2014, whichever occurs first.

*Id.* at 1. (emphasis omitted).

---

[1] The addition of this clause is the only relevant difference between the original and amended complaints.

The Arbitration Agreement goes on to list eight numbered statements which MacRury adopted by signing the agreement. *Id.* at 1–2. The most relevant statements are as follows:

> (1) I understand that by signing this agreement, I am waiving my right to have my claim decided by a jury. My claim will be decided by an arbitrator.
>
> (2) I understand that I am agreeing to arbitrate all claims arising out of the incident described above, including any claims for medical conditions that develop after I sign this agreement.

*Id.* at 1.

The remainder of the numbered statements provide the financial details of the agreement and confirm that MacRury had an opportunity to consult with an attorney prior to signing the agreement and that MacRury was not coerced into signing the agreement. In his own handwriting, MacRury confirmed that he had read and understood the agreement and consulted with an attorney. *Id.* at 2.

## II.

Defendant requests that the case be stayed and arbitration compelled pursuant to the 2015 arbitration agreement. The Federal Arbitration Act ("FAA") governs requests to enforce arbitration agreements. The FAA was enacted in response to the hostility of American courts to enforcing arbitration agreements and constituted an effort to place arbitration agreements upon the same footing as other contracts. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 11 (2001). Section 2 of the FAA provides:

> A written provision in any… contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction…shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*,

470 U.S. 213 218, (1985) (citing 9 U.S.C. §§ 3–4). An arbiter's power to hear claims does not arise from law governing jurisdiction, but from the contract of the parties.

The pertinent question, then, is whether there is a valid agreement between the parties and whether the specific dispute falls within the substantive scope of the agreement. *Andrews v. TD Ameritrade, Inc.*, 596 Fed. App'x 366, 370 (6th Cir. 2014). "Because arbitration agreements are fundamentally contracts, [courts] review the enforceability of an arbitration agreement according to the applicable state law of contract formation." *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir.2007) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995)). "The federal policy favoring arbitration, however, is taken into account even in applying ordinary state law." *Cooper v. MRM Inv. Co*., 367 F.3d 493, 498 (6th Cir. 2004). The party seeking to enforce a contract has the burden of showing that it exists. *See Kamalnath v. Mercy Mem'l Hosp. Corp*, 487 N.W.2d 499, 504 (Mich. App. 1992).

Once a party meets this burden, there is a presumption that an arbitration agreement is valid and enforceable. *See Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987). Plaintiffs may rebut the presumption of validity only by raising generally applicable state-law contract defenses such as fraud, forgery, duress, mistake, lack of consideration or mutual obligation, and unconscionability. *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). A party seeking invalidation of an arbitration agreement bears the burden of proving that the arbitration provision is invalid or does not encompass the claim at issue. *See Green Tree Fin. Corp.-Alabama v. Randolph,* 531 U.S. 79, 92 (2000). As noted above, "an enforceable contractual right to compel arbitration operates as a quasi-jurisdictional bar to a plaintiff's claims, providing grounds for dismissal of the suit." *Johnson Associates*, 680 F.3d at 718.

The Sixth Circuit uses a four factor test to determine if a case should be dismissed or stayed and arbitration compelled: (1) whether the parties agreed to arbitrate; (2) the scope of the agreement to arbitrate; (3) if federal statutory claims are involved, whether Congress intended for those claims to be arbitrable; and (4) if only some of the claims are subject to arbitration, whether the nonarbitrable claims should be stayed pending arbitration. *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003). "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (U.S. 1983).

**III.**

Defendant has attached the arbitration agreement to the motion to dismiss. MacRury admits that the arbitration agreement exists and, if applicable, would compel arbitration. MacRury's only argument in opposition to Defendant's motion is that the current claim is outside the scope of the 2015 arbitration agreement. He appears to advance the following line of argument: the arbitration agreement covered an injury to only his right shoulder, while the current claim is brought for injuries sustained to both shoulders, and so the current injury was not a "known claim for a specific injury" at the time the arbitration agreement was entered into.

Defendant's theory regarding why the current claim falls within the scope of the original arbitration agreement proceeds as follows. First, Defendant explains that MacRury is seeking recovery on a negligent assignment theory. Defendant contends that, to succeed on a negligent assignment claim, MacRury must prove that MacRury had a preexisting injury which Defendant was aware of but nonetheless assigned him to a position which exacerbated the injury. Relying upon a similar case from the Fifth Circuit, Defendant argues that MacRury's negligent

assignment claim is thus a claim for reinjury of the medical condition that was covered by the arbitration agreement. Although investigation may ultimately reveal that MacRury is bringing a claim for a new, distinct injury, his pleadings are insufficient to establish that fact. Because of the federal policy favoring arbitration and the broad construction of the scope of arbitration agreements, arbitration will be compelled.

**1.**

"[T]he Jones Act 'incorporates the standards of the Federal Employers' Liability Act ["FELA"] . . . which renders an employer liable for the injuries negligently inflicted on its employees by its officers, agents, or employees.'" *Rannals v. Diamond Jo Casino*, 265 F.3d 442, 448 (6th Cir. 2001) (quoting *Hopson v. Texaco, Inc.*, 383 U.S. 262, 263 (1966)). To establish negligence, "a plaintiff must show that her employer failed to provide a safe workplace by neglecting to cure or eliminate obvious dangers of which the employer or its agents knew or should have known and that such failure caused the plaintiff's injuries and damages." *Rannals v. Diamond Jo Casino*, 265 F.3d 442, 449 (6th Cir. 2001). For negligence to exist, the employer must have known, through actual or constructive knowledge, that "prevalent standards of conduct were inadequate to protect petitioner and similarly situated employees." *Urie v. Thompson*, 337 U.S. 163, 178 (1949).

MacRury's two-page complaint does not, on its face, directly identify the nature of the negligence which he contends that Defendant engaged in. But MacRury's response brief appears to clarify that "MacRury is only asking for damages for the negligent assignment." Pl. Resp. Br. at 3, ECF No. 12. The crux of this kind of claim is that the employer "knew or should have known that its assignment exposed the employee to an unreasonable risk of harm." *Moreno v. Grand Victoria Casino*, 94 F. Supp. 2d 883, 895 (N.D. Ill. 2000) (citing *Fletcher v. Union*

*Pacific R.R. Co.*, 621 F.2d 902, 909–10 (8th Cir.1980) (collecting cases)). Often, this kind of claim will arise where an employee has a medical condition which the employer is aware of but the employer nevertheless assigns the employee to a position that may aggravate or exacerbate the condition. *See Fletcher v. Union Pac. R. Co.*, 621 F.2d 902, 909 (8th Cir. 1980) (finding that a claim for negligent assignment had been stated when the employee had a back condition that "flared up each time he was returned to work as a sectionhand").

But the negligent assignment theory is simply a subset of a simple negligence theory under FELA. As explained above, prevailing upon a negligent assignment theory thus requires a showing that the employer "knew or should have known" that the employee had an injury or other medical condition which rendered the employee unfit for certain work activities. *See Kichline v. Consol. Rail Corp.*, 800 F.2d 356, 361 (3d Cir. 1986) ("[A] claim of negligent assignment, . . . does not arise until the employer, knowing of an employee's partial disability, nevertheless assigns him to unsuitable work."); *Dickey v. Midstream Fuel Serv., Inc.*, 963 So. 2d 632, 638 (Ala. Civ. App. 2007) (same).

MacRury's complaint contains no factual allegations regarding any knowledge by Defendant of a medical condition, much less a partial disability. In fact, MacRury alleges that Defendant's negligent assignment was "separate, apart and exclusive of any pre-existing conditions." Am. Compl. at 2. Allegations of a pre-existing condition (which the employer is aware of) are a prerequisite for relief under a negligent assignment theory, meaning it does not appear that MacRury has stated a claim for negligent assignment.[2] But Defendant argues that MacRury's current injury arises out of the September 2013 shoulder injury which gave rise to the arbitration agreement. The parties appear to agree that only MacRury's right shoulder was

---

[2] It is possible that Defendant breached its duty to provide a safe workplace and thus is liable for simple negligence, but no corresponding factual allegations appear in the amended complaint and MacRury indicates in his response brief that only a claim for negligent assignment is being alleged.

injured in 2013, while he is currently alleging that both his shoulders have been injured. If true, then the arbitration agreement would cover only the reinjury of the right shoulder. *See Terrebonne v. K-Sea Transp. Corp.*, 477 F.3d 271, 286 (5th Cir. 2007) (holding that a claim premised on a "re-injury" was covered by an arbitration agreement that governed the original injury).

Defendant does not seek dismissal for failure to state a claim. Rather, Defendant appears to concede that MacRury's current claim for damages is premised on a shoulder condition which can be traced back to the 2013 shoulder injury. Defendant has thus supplied what MacRury's complaint lacks: an indication that Defendant was on notice of a medical condition that may have made him unable to perform certain duties. "[A]ll claims arising out of the incident, . . . including any claims for medical conditions that develop after," are subject to arbitration. Claims Arb. Agree. at 1. That is, if the 2015 arbitration agreement governs, then MacRury's complaint is not subject to dismissal for failure to state a claim because Defendant had notice of a medical condition.

Because Defendant has not moved for dismissal and because (at least part of) MacRury's claim is arguably within the scope of the arbitration agreement, the motion to compel arbitration will be granted. *See Moses H. Cone Mem'l Hosp*, 460 U.S. at 24–25 ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."); *Turi v. Main St. Adoption Servs.*, LLP, 633 F.3d 496, 507 (6th Cir. 2011) (explaining that, if the parties delegated authority to determine the scope of the agreement to the arbiter, referral is not necessary for "claims that are clearly outside the scope of the arbitration agreement"). Admittedly, no delegation of authority to determine the scope of the agreement was made here. But as explained above, MacRury's amended complaint

does not state a claim *unless* his current claims arise from the 2013 injury. Arbitration, not dismissal, is thus the best approach, and a stay will be imposed. If the arbiter concludes, after receiving additional information regarding the factual basis for MacRury's claims, that the suit involves claims not covered by the arbitration agreement, the stay will be lifted.

**2.**

For clarity, several miscellaneous arguments which MacRury raises in his response brief will be addressed. First, MacRury cites a number of cases which explain that the statute of limitations for negligent assignment claims accrue on the last day the employee is exposed to the harmful condition. Defendant has not argued that MacRury's claim is barred by the statute of limitations.

MacRury also argues that the arbitration agreement cannot be construed as covering the current claim because an arbitration agreement "must reflect a bargained-for settlement of a known claim for a specific injury, as contrasted with an attempt to extinguish potential future claims the employee might have arising from injuries known or unknown by him." *Babbitt v. Norfolk & W. Ry. Co.*, 104 F.3d 89, 93 (6th Cir. 1997). *Babbit* involved an attempt by the company to enforce a general release of all claims by its employees. But the arbitration agreement at issue was not a blanket agreement to arbitrate all claims, in any context, that might arise in the future. Rather, MacRury simply agreed to arbitrate "all claims arising out of the incident." Claims Arb. Agree. at 1.[3]

Finally, MacRury attaches a number of medical records as exhibits to his response brief. He characterizes those records as establishing that the original injury was to his right shoulder,

---

[3] Additionally, MacRury alleges in his amended complaint that the negligent assignment began on November 7, 2014. Am. Compl. at 2. The arbitration agreement was not signed under February 27, 2015. Thus, MacRury's own timeline establishes that his negligent assignment claim was a known claim at the time the arbitration agreement was signed.

and further demonstrating that the injuries which give rise to the current claim were to both shoulders. A court faced with a Rule 12(b)(6) motion must typically limit its consideration to the pleadings or convert it to a motion for summary judgment under Federal Rule of Civil Procedure 12(d). *Tackett v. M & G Polymers, USA, L.L.C.*, 561 F.3d 478, 487 (6th Cir.2009). Conversion to a motion for summary judgment, however, "'should be exercised with great caution and attention to the parties' procedural rights.'" *Id.* (quoting 5C Charles Alan Wright & Arthur R. Miller § 1366). A court has discretion regarding whether to convert a motion to dismiss to a motion for summary judgment. *Jones v. City of Cincinnati*, 521 F.3d 555, 561–62 (6th Cir. 2008). The Sixth Circuit has held that "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997).

Because the exhibits which MacRury refers to were not attached to the complaint, they will not be considered at this stage. Even if they were considered, those records do not substantially change the reasoning above. If the injury is new and distinct, MacRury's complaint fails to state a claim. If the injury is related to the 2013 right shoulder injury, the arbitration agreement governs.

**IV.**

Accordingly, it is **ORDERED** that Defendant American Steamship Company's motion to stay and compel arbitration, ECF No. 9, is **GRANTED.**

It is further **ORDERED** that all proceedings related to this action are **STAYED.**

It is further **ORDERED** that the parties are **DIRECTED** to arbitrate MacRury's claims in accordance with this opinion and order and the arbitration agreement.

It is further **ORDERED** that Plaintiff MacRury is **DIRECTED** to file a status report on the docket explaining the current posture of the action **within 30 days after the arbitration concludes.**

Dated: July 11, 2017                    s/Thomas L. Ludington
                                        THOMAS L. LUDINGTON
                                        United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 11, 2017.

s/Kelly Winslow
KELLY WINSLOW, Case Manager