UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARK MACRURY,

          Plaintiff,          Case No. 16-cv-13889

v.          Honorable Thomas L. Ludington

AMERICAN STEAMSHIP COMPANY,

          Defendant.

_____/

**OPINION AND ORDER GRANTING MOTION FOR LEAVE TO FILE
AN AMENDED COMPLAINT, DIRECTING FILING OF AMENDED COMPLAINT,
AND LIFTING STAY**

On November 2, 2016, Plaintiff Mark MacRury filed a complaint against Defendant American Steamship Company alleging negligent assignment. ECF No. 1. On April 27, 2017, Defendant filed a motion to stay litigation in favor of arbitration. ECF No. 9. Five days later, MacRury filed an amended complaint. ECF No. 10. The Court granted the motion to stay, reasoning that MacRury's injuries either arose out of the preexisting injury that was the subject of the arbitration agreement, or that MacRury had failed to state a claim for negligent assignment. ECF No. 17.

Now, MacRury has filed a motion for leave to file a second amended complaint and to lift the stay. ECF No. 18. Defendant contests the motion. For the following reasons, the motion for leave to file an amended complaint will be granted, and the stay will be lifted.

**I.**

**A.**

MacRury's proposed second amended complaint, like his first two complaints, spans only three pages. MacRury has made changes to only one paragraph, which will be quoted in full here:

> On or about November 7, 2014, and up to August 2016, Defendant <u>was aware that the everyday activities of Plaintiff's job assigned had resulted in severe shoulder injuries to Plaintiff's shoulder resulting in surgery, but Defendants,</u> did, <u>nevertheless,</u> negligently assign Plaintiff to work back [sic] to said activities <u>involving heavy lifting, reaching and holding maneuvers in non-ergonomically correct positions when</u> it knew or should have known that such assignments would result in new injury, separate, apart and exclusive of any pre-existing conditions, because of the inadequate work procedures, assistance, and equipment he was provided, whereby <u>new, distinct</u> injuries occurred to both shoulders resulting from said failure to provide a safe place to work and seaworthy vessel.

Prop. Sec. Am. Compl. at 2, ECF No. 18 (emphasis in original). MacRury has underlined the new allegations. The remainder of the proposed second amended complaint is identical to the first amended complaint, and the Court's summary in the July 11, 2017, opinion and order will be relied upon as if restated here in full.

One final fact must be noted. As discussed in the Court's prior opinion, on February 27, 2015, MacRury and Defendant executed a Claims Arbitration Agreement. Claims Arb. Agree., ECF No. 6, Ex. A. That agreement will be reproduced in part:

> WHEREAS, Mark Macrury . . . was employed as a Conveyorman on the M/V H. Lee White and allegedly became ill or injured on September 5, 2013, American Steamship Company . . . [has] a duty to pay maintenance and cure because ASC was the owner and/or operator of the vessel and/or the employer of Mark Macrury. ASC has the obligation to pay Mark Macrury $16.00 PER DAY maintenance and $188.00 PER WEEK contractual support benefit (CSB) (the CSB payments being required for a period of one year only) pursuant to the contract with the SIU.
>
> It is the position of ASC that ASC is responsible only for maintenance and cure and is not responsible or liable for any other damages in regard to Mark Macrury's alleged illness or injuries under the doctrine of unseaworthiness, the Jones Act or any other applicable law. Nonetheless, ASC is prepared to make advances against settlement, arbitration award or judgment of any claim that

> could arise under the doctrine of unseaworthiness, the Jones Act, or any other applicable law provided Mark Macrury agrees to arbitrate these claims.
>
> Therefore, in consideration of Mark Macrury agreeing to arbitrate all claims against ASC . . . arising under the theory of unseaworthiness, Jones Act, or any other applicable law, . . . ASC agrees to pay Mark Macrury $86.80 per day (to be paid in biweekly installments of $1,215.20), in addition to $16.00 per day in maintenance and $188 per week CSB, as an advance against settlement, arbitration award or judgment, until he has been declared fit for duty, and/or maximum medical improvement, and/or October 27, 2014, whichever occurs first.

*Id.* at 1. (emphasis omitted).

**B.**

In the July 11, 2017, opinion and order, the Court compelled arbitration pursuant to the 2015 arbitration agreement. The Court explained that, to state a claim for negligent assignment, MacRury had to allege that his "employer 'knew or should have known that its assignment exposed the employee to an unreasonable risk of harm.' *Moreno v. Grand Victoria Casino*, 94 F. Supp. 2d 883, 895 (N.D. Ill. 2000) (citing *Fletcher v. Union Pacific R.R. Co.*, 621 F.2d 902, 909–10 (8th Cir.1980) (collecting cases))." July 11, 2017, Op. & Order at 6–7. More specifically, MacRury was required to allege that his "employer 'knew or should have known' that the employee had an injury or other medical condition which rendered the employee unfit for certain work activities." *Id.* at 7.

In his first amended complaint, MacRury did not allege that he was suffering from a pre-existing condition. More importantly, MacRury did not allege that his employer had actual or constructive knowledge of any such pre-existing condition. Thus, the Court found, MacRury had not stated a claim for negligent assignment.

However, Defendant was seeking an order compelling arbitration, not dismissal. And in seeking arbitration, Defendant admitted that MacRury's right shoulder had previously been injured and that MacRury had entered into an arbitration agreement for all claims arising out of

that injury. Thus, the arbitration agreement identified by Defendant demonstrated both that MacRury had a pre-existing condition and that Defendant has aware of it. Because the only identified basis for a negligent assignment claim was the subject of that arbitration agreement, the Court compelled arbitration. Now, MacRury seeks leave to amend his complaint to correct the missteps identified in the Court's previous order.

## II.

### A.

Federal Rule of Civil Procedure 15(a)(2) provides that a party may amend its pleading with the court's leave and that "the court should freely give leave when justice so requires." Denial of a motion to amend is appropriate, however, "'where there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.'" *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Attempts to add a party to an existing case are governed by Federal Rules of Civil Procedure 15, 20, and 21. After a responsive pleading has been served, "the standard for adding a party is the same regardless of the rule under which the motion is made: the decision lies within the discretion of the court." *Boyd v. D.C.*, 465 F. Supp. 2d 1, 2 n.3 (D.D.C. 2006) (citing *Wiggins v. Dist. Cablevision, Inc.*, 853 F.Supp. 484, 499 n.29 (D.D.C.1994)). *See also Oneida Indian Nation of N.Y. State v. Cty. of Oneida, N.Y.*, 199 F.R.D. 61, 73 (N.D.N.Y. 2000); 6 Fed. Prac. & Proc. Civ. §§ 1474, 1479 (3d ed.).

An amendment would be futile if the amended complaint does not state a claim upon which relief can be based. A pleading fails to state a claim under Rule 12(b)(6) if it does not

contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678-79 (quotations and citation omitted).

**B.**

The Federal Arbitration Act ("FAA") governs requests to enforce arbitration agreements. The FAA was enacted in response to the hostility of American courts to enforcing arbitration agreements and constituted an effort to place arbitration agreements upon the same footing as other contracts. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 11 (2001). Section 2 of the FAA provides:

> A written provision in any… contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction…shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*,

470 U.S. 213 218, (1985) (citing 9 U.S.C. §§ 3–4). An arbiter's power to hear claims does not arise from law governing jurisdiction, but from the contract of the parties.

The pertinent question, then, is whether there is a valid agreement between the parties and whether the specific dispute falls within the substantive scope of the agreement. *Andrews v. TD Ameritrade, Inc.*, 596 Fed. App'x 366, 370 (6th Cir. 2014). "Because arbitration agreements are fundamentally contracts, [courts] review the enforceability of an arbitration agreement according to the applicable state law of contract formation." *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir.2007) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995)). "The federal policy favoring arbitration, however, is taken into account even in applying ordinary state law." *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004). The party seeking to enforce a contract has the burden of showing that it exists. *See Kamalnath v. Mercy Mem'l Hosp. Corp*, 487 N.W.2d 499, 504 (Mich. App. 1992).

Once a party meets this burden, there is a presumption that an arbitration agreement is valid and enforceable. *See Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987). Plaintiffs may rebut the presumption of validity only by raising generally applicable state-law contract defenses such as fraud, forgery, duress, mistake, lack of consideration or mutual obligation, and unconscionability. *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). A party seeking invalidation of an arbitration agreement bears the burden of proving that the arbitration provision is invalid or does not encompass the claim at issue. *See Green Tree Fin. Corp.-Alabama v. Randolph,* 531 U.S. 79, 92 (2000). As noted above, "an enforceable contractual right to compel arbitration operates as a quasi-jurisdictional bar to a plaintiff's claims, providing grounds for dismissal of the suit." *Johnson Associates*, 680 F.3d at 718.

The Sixth Circuit uses a four factor test to determine if a case should be dismissed or stayed and arbitration compelled: (1) whether the parties agreed to arbitrate; (2) the scope of the agreement to arbitrate; (3) if federal statutory claims are involved, whether Congress intended for those claims to be arbitrable; and (4) if only some of the claims are subject to arbitration, whether the nonarbitrable claims should be stayed pending arbitration. *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003). "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (U.S. 1983).

### III.

### A.

Although MacRury's third attempt to plead a claim for negligent assignment is not a paragon of clarity, it suffices to move beyond a formulaic recitation of the labels and conclusions necessary for a negligent assignment cause of action.

As previously explained, "prevailing upon a negligent assignment theory . . . requires a showing that the employer 'knew or should have known' that the employee had an injury or other medical condition which rendered the employee unfit for certain work activities." July 11, 2017, Op. & Order at 7. The first amended complaint contained "no factual allegations regarding any knowledge by Defendant of a medical condition, much less a partial disability." *Id.* The proposed second amended complaint corrects those oversights. First, MacRury identifies a preexisting injury: the second amended complaint alleges that "the everyday activities of Plaintiff's job . . . had resulted in severe shoulder injuries . . . resulting in surgery." Prop. Sec. Am. Compl. at 2. Further, MacRury now alleges that "Defendant was aware that the everyday

activities of Plaintiff's job . . . had resulted in severe shoulder injuries . . . but Defendant did, nevertheless, negligently assign Plaintiff to work back [sic] to said activities involving heavy lifting, reaching and holding maneuvers in non-ergonomically correct positions." *Id.* And, later in the paragraph, MacRury alleges that the negligent assignment resulted in "new, distinct injuries . . . to *both shoulders*." *Id.* (emphasis added).

These changes are not extensive, but they are significant. In particular, MacRury's allegation that he had sustained "severe shoulder injuries . . . resulting in surgery" is noteworthy. If MacRury previously had shoulder surgery, his employer likely knew. Shoulder surgery for "severe shoulder injuries" would inevitably require an extended period of recuperation, during which time MacRury would have been unable to work. And, upon his return to work, Defendant would thus have been on notice that MacRury's shoulder was weakened. Admittedly, MacRury does not identify a cause of the injuries other than "the everyday activities of Plaintiff's job." But a negligent assignment cause of action does not necessarily require that the preexisting condition have resulted from a single incident.

Defendant argues that MacRury's proposed changes should not alter the Court's analysis. First, Defendant argues that because the Court construed the arbitration agreement as establishing that Defendant had knowledge of one prior shoulder injury, any new allegations suggesting that Defendant had knowledge of prior injuries are irrelevant. But that is not precisely true. In the July 11, 2017, opinion and order, the Court explained that the only prior injury which had been identified was the shoulder injury that was the subject of the arbitration agreement. Now, MacRury is alleging that he had prior injuries to *both* shoulders which required surgery. Any preexisting injury to MacRury's left shoulder (which Defendant had notice of) would be manifestly outside the scope of the arbitration agreement and a valid predicate for a negligent

assignment claim. Because MacRury has now identified a preexisting injury which Defendant allegedly had notice of that has no possible relationship to the arbitration agreement, the proposed changes are not futile.

**B.**

One final issue must be addressed. As the Court explained in the July 11, 2017, opinion and order, "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." July 11, 2017, Op. & Order at 8 (quoting *Moses H. Cone Mem'l Hosp v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). It seems plausible that the new injuries which MacRury alleges he sustained to his right shoulder arose out of the injury that is governed by the arbitration agreement. To the extent that is true, MacRury's current claim for negligent assignment may *partially* arise out of the incident subject to the arbitration agreement.

In the Sixth Circuit, the standard for determining whether a particular claim is arbitrable is "whether [the court] can resolve the instant case without reference to the agreement containing the arbitration clause." *NCR Corp. v. Korala Assocs., Ltd.*, 512 F.3d 807, 814 (6th Cir. 2008). "If such a reference is not necessary to the resolution of a particular claim, then compelled arbitration is inappropriate, unless the intent of the parties indicates otherwise." *Id.* In *NCR Corp.*, the Sixth Circuit expressly rejected the district court's rationale that the arbitration clause covered "all claims which *touch upon matters* covered by the agreement." *Id.* at 813 (emphasis in original) (internal citations omitted). Rather, the Sixth Circuit held that "even though there are factual allegations common to" the matters covered by the arbitration agreement and other, similar claims, arbitration of the factually similar claims was not required. *Id.* at 815–16.

The Sixth Circuit's decision in *Simon v. Pfizer Inc.* is particularly instructive:

> Where one claim is specifically covered by an arbitration agreement, and a second claim is not, the arbitrability of the second is governed by the extent to which the

> second claim is substantially identical to the first. On the one hand, a party cannot avoid arbitration simply by renaming its claims so that they appear facially outside the scope of the arbitration agreement. *See Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir.2003). In order to determine whether such renaming has occurred, a court must examine the underlying facts—when an otherwise arbitrable claim has simply been renamed or recast it will share the same factual basis as the arbitrable claim. However, a claim that is truly outside of an arbitration agreement likewise cannot be forced into arbitration, even though there may be factual allegations in common. In particular, the determination that a claim "require[s] reference" to an arbitrable issue or factual dispute is not determinative. *Bratt Enters., Inc.*, 338 F.3d at 613.

398 F.3d 765, 776 (6th Cir. 2005).

The *Simon* Court ultimately found that the plaintiff's "claims required[d] consideration of some factual issues that [were] subject to arbitration, but the claims [had] independent legal bases." *Id.* at 777.

*NCR Corp.* and *Simon* involved scenarios where an arbitration agreement clearly covered some claims, but did not cover other claims. Here, the arbitration agreement arguably covers part of the potential factual basis for MacRury's claim, but does not cover an alternative factual basis. The cases are thus distinguishable, but their reasoning is persuasive and directly applicable. MacRury's prior shoulder injury which is the subject of the arbitration agreement may provide a factual basis for satisfying some of the elements of a negligent assignment claim. But, ultimately, the legal basis for MacRury's current negligent assignment claim is independent from the basis for the legal claims that MacRury agreed to arbitrate. After his shoulder injury, MacRury agreed to arbitrate any claims regarding his shoulder injury or subsequent medical conditions which asserted that Defendant was responsible or liable for the injury. Now, MacRury is arguing that, despite knowing of his weakened shoulders, Defendant negligently assigned him to work beyond his capabilities, thus causing injury. There is factual overlap between the claims—the prior

shoulder injury provides one potential basis for fulfilling some of the elements of the negligent assignment claim—but the legal theories appear to be distinct.

The Court is cognizant of the fact that there strong presumption in favor of arbitration. *NCR Corp.*, 512 F.3d at 814. And there is, admittedly, ambiguity regarding whether MacRury's current claim for negligent assignment partially arises out of the injury which is the subject of the arbitration agreement. But MacRury now adequately alleges that he had sustained prior injuries to both his shoulders. As such, MacRury has alleged an independent and adequate factual basis by which he could prevail on his negligent assignment claim. For that reasons (and because MacRury's current claim is legally distinguishable from the arbitrable claims, despite factual similarities), arbitration is not appropriate, and the stay will be lifted.[1]

### IV.

Accordingly, it is **ORDERED** that Plaintiff MacRury's motion for leave to file a second amended complaint, ECF No. 18, is **GRANTED.**

It is further **ORDERED** that Plaintiff MacRury is **DIRECTED** to file his second amended complaint **on or before November 3, 2017.**

It is further **ORDERED** that the stay imposed on July 11, 2017, ECF No. 17, is **LIFTED.**

Dated: October 25, 2017    s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

---

[1] It must be emphasized, however, that MacRury has simply hurdled the Rul e12(b)(6) barrier. During discovery and upon filing of dispositive motions, MacRury will be required to corroborate his allegation that the current claim arises from a distinct factual and legal basis than the claims identified in the arbitration agreement. If they are not, the question of whether arbitration should be compelled will be revisited.

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 25, 2017.

                                        s/Kelly Winslow
                                        KELLY WINSLOW, Case Manager